UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KENYON JOVANI LEWIS,

                  Petitioner,

vs.

JACK PALMER, et al.,

                  Respondents.

Case No. 3:09-cv-00741-LRH-WGC

ORDER

This is a counseled amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF #15).  Now before the court is respondents' answer (ECF #27).  Petitioner filed a reply to the answer (ECF #31).

**I.  Procedural History and Background**

On December 15, 2006, the State filed an indictment against petitioner for conspiracy to violate the controlled substance act; trafficking in a controlled substance; unlawful possession of a firearm; and possession of a short-barreled shotgun.  Exh. 1.[1]  At his arraignment on December 21, 2006, petitioner pleaded not guilty to all charges.  Exh. 2 at 1. On March 8, 2007, the State sought a superseding indictment, which it filed on March 9, 2007.  Exhs. 6-7.  Petitioner pled not guilty to the superseding indictment.  Exh. 2 at 3-4.  A jury found petitioner guilty on May 23, 2007.  Exh. 22.

_____

[1] Exhibits 1-74 are exhibits to petitioner's first amended petition (ECF #15) and may be found at ECF #s 16-21.

On July 9, 2007, petitioner appeared for sentencing.  Exh. 2 at 11.  The district court imposed the following concurrent prison terms: count I (conspiracy to violate the controlled substances act) - twelve to thirty months; count II (trafficking in controlled substance, low level) - twelve to thirty-six months; count III (unlawful possession of firearm) - thirteen to sixty months; count IV (trafficking in controlled substance, high level) - life with the possibility of parole after ten years; count V (possession of short-barreled shotgun) - nineteen to forty-eight months; count VI (unlawful possession of firearm) - sixteen to seventy-two months; count VII (unlawful possession of firearm) - sixteen to seventy-two months; and count VIII (trafficking in controlled substance, low level) - nineteen to forty-eight months. Exh. 26; *see also* Exh. 2 at 12-13.  Judgment of conviction was filed on July 19, 2007.  Exh. 26.

Petitioner appealed, and the Nevada Supreme Court affirmed petitioner's convictions on January 5, 2009.  Exh. 55.  Remittitur issued on January 30, 2009.  Exh. 59.

Petitioner filed a *pro se* state postconviction petition for writ of habeas corpus on June 26, 2008.  Exh. 42.  The state district court did not conduct a hearing and entered a written order denying the petition on March 30, 2009.  Exh. 60.  The Nevada Supreme Court affirmed the denial of the petition on November 23, 2009, and remittitur issued on December 18, 2009.  Exhs. 68, 70.

On December 14, 2009, petitioner dispatched his petition for writ of habeas corpus to this court (ECF #4).  This court granted petitioner's motion for appointment of counsel, and petitioner, through counsel, filed an amended petition (ECF #s 3, 15).  Respondents have answered and argue that petitioner's ineffective assistance of counsel claims must be denied pursuant to the Antiterrorism and Effective Death Penalty Act (ECF #27).

## II. Legal Standards

### A. Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)       resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

1            (2)       resulted in a decision that was based on an unreasonable
2    determination of the facts in light of the evidence presented in the State
     court proceeding.

3    28 U.S.C. § 2254(d).

4          The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

5    order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to

6    the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is

7    contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if

8    the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"

9    or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

10   Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

11   *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)

12   and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). This court's ability to grant a writ is limited to cases

13   where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts

14   with [Supreme Court] precedents." *Harrington v. Richter,* 562 U.S. 86, 131 S.Ct. 770, 786 (2011).

15         A state court decision is contrary to clearly established Supreme Court precedent, within

16   the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law

17   set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

18   indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

19   from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v.*

20   *Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

21         A state court decision is an unreasonable application of clearly established Supreme Court

22   precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing

23   legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

24   of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The

25   "unreasonable application" clause requires the state court decision to be more than incorrect or

26   erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*.

27   (quoting *Williams*, 529 U.S. at 409).

28   ///

1    In determining whether a state court decision is contrary to federal law, this court looks to the

2    state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford*

3    *v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made

4    by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting

5    the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

6    **B. Ineffective Assistance of Counsel**

7    Ineffective assistance of counsel claims are governed by the two-part test announced in

8    *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner

9    claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made

10   errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

11   Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529

12   U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the

13   defendant must show that counsel's representation fell below an objective standard of reasonableness.

14   *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for

15   counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A

16   reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.*

17   Additionally, any review of the attorney's performance must be "highly deferential" and must adopt

18   counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of

19   hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that

20   counsel's actions might be considered sound trial strategy. *Id.*

21   Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance

22   of counsel resulting in prejudice, "with performance being measured against an objective standard of

23   reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005)

24   (internal quotations and citations omitted).

25   If the state court has already rejected an ineffective assistance claim, a federal habeas court may

26   only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland*

27   standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's

28   conduct falls within the wide range of reasonable professional assistance. *Id.*

-4-

1    The United States Supreme Court has described federal review of a state supreme court's

2  decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*,

3  131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)).  The

4  Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance. . . .

5  through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted).  Moreover, federal

6  habeas review of an ineffective assistance of counsel claim is limited to the record before the state court

7  that adjudicated the claim on the merits.  *Cullen*, 131 S.Ct. at 1398-1401.  The United States Supreme

8  Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding

9  claims of ineffective assistance of counsel:

> 10   Establishing that a state court's application of *Strickland* was unreasonable under §
>     2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are
> 11   both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320,
>     333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,
> 12   review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland*
>     standard is a general one, so the range of reasonable applications is substantial. 556 U.S.
> 13   at ——, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of
>     equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).
> 14   When § 2254(d) applies, the question is whether there is any reasonable argument that
>     counsel satisfied *Strickland's* deferential standard.

16  *Harrington*, 131 S.Ct. at 788.  "A court considering a claim of ineffective assistance of counsel must

17  apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable

18  professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689).  "The question is whether an

19  attorney's representation amounted to incompetence under prevailing professional norms, not whether

20  it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

21  **III.  Instant Petition**

22    As discussed below, the court has considered the parties' arguments as set forth in the amended

23  petition, answer, and reply, as well as carefully reviewed the record, and concludes that petitioner's

24  claims of ineffective assistance of counsel lack merit and shall be denied.

25    **Ground 1**

26    In grounds 1(A) - (J) petitioner alleges that his trial counsel rendered ineffective assistance in

27  violation of his Sixth and Fourteenth Amendment rights.

28  ///

1    **Ground 1(A)**

2        Petitioner claims that counsel was ineffective for failing to file a motion to suppress evidence

3    found in the vehicle (#15, pp. 12-13).  He argues that police officers did not have a valid reason to stop

4    the vehicle petitioner was driving, and counsel was deficient in failing to challenge the existence of

5    probable cause for the stop.  *Id*. at 12.  Petitioner contends that officers admitted at the arrest that they

6    stopped the car because the plates were registered to a female and no female was in the car.  *Id*.

7    Petitioner claims counsel deficiently failed to file motions to subpoena records to prove that officers

8    never received a dispatch call about a road rage incident.  *Id*.

9        Petitioner was pulled over driving a reddish or maroon Cadillac on October 30, 2006, in

10    response to Las Vegas Metropolitan Police Department (LVMPD) officers' receipt of a dispatch call

11    regarding a reddish car, a Cadillac, involved in an incident in which occupants of the car had flashed

12    a gun at the occupants of another vehicle.  *Id*. at 9-10.  LVMPD officers conducted a felony stop of the

13    Cadillac at a gas station.  The three occupants were instructed to exit the vehicle; an officer conducted

14    a visual inspection of the vehicle to verify all occupants had exited and saw marijuana and what looked

15    like bags of methamphetamine in plain view in the console between the driver and passenger seats.

16    Officers arrested petitioner, his cousin and co-defendant, and the third occupant.  During an inventory

17    search of the vehicle before it was impounded, a detective located a 9mm handgun underneath the

18    driver's seat, loaded with twelve rounds.  The vehicle's armrest contained baggies of methamphetamine,

19    as well as what was believed to be ecstasy pills.  *Id*. at 9-10.

20        Probable cause to conduct a warrantless arrest exists when police have reasonably trustworthy

21    information regarding facts and circumstances that are sufficient in themselves to warrant a person of

22    reasonable caution to believe that an offense has been or is being committed by the person to be

23    arrested.  *Beck v. State of Ohio*, 379 U.S. 89 (1964).

24        Rejecting petitioner's claim, the Nevada Supreme Court stated:

25        [Petitioner] claimed that his trial counsel was ineffective for failing to file a motion to
        suppress the evidence found in the vehicle. [Petitioner] claimed that there was no
26        probable cause to stop the vehicle and that the stop of his vehicle was based on a
        non-existent phone call to the police about a road rage incident involving a firearm.
27        [Petitioner] claimed that the real reason the police pulled him over was that the car was
        registered to a female and no female was in the car when it was pulled over.

28

-6-

1
2
3
4
5
6
7
8
9
10
11
12
13

[Petitioner] failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. The police officer and the detective who conducted the initial traffic stop testified that they responded to a dispatch call regarding a road rage incident involving a firearm. The vehicle [petitioner] was driving matched the description of the vehicle involved in the road rage incident. There was probable cause to conduct a traffic stop in the instant case. *Arterburn v. State*, 111 Nev. 1121, 1125, 901 P.2d 668, 670 (1995) (recognizing that in a seizure the police officer must have an articulable suspicion that the civilian has committed a crime). Further, to the extent that appellant claimed that there was some other reason to challenge the search, appellant failed to demonstrate that there was a reasonable probability that a motion to suppress would have succeeded. The testimony at trial established that an inventory search was conducted after the traffic stop; after observing narcotics in the front console area and after arresting appellant for the narcotics, the police conducted an inventory search of the vehicle, which led to the discovery of a gun under the driver's seat and more narcotics. *See Diomampo v. State*, 124, Nev. ___, ___, 185 P.3d 1031, 1042-43 (2008) (recognizing that a warrantless inventory search is *per se* reasonable and constitutional when it complies with police department policies and when it is not a ruse for rummaging to discover incriminating evidence); *see also United States v. Ruckles*, No 08-30088, 2009 WL 3719209, *4, 5 (9th Cir. November 9, 2009) (recognizing that even when a search was not permitted as a search incident to a lawful arrest, the evidence seized may still be admissible under the inevitable discovery doctrine). Counsel cannot be deemed ineffective for failing to file futile motions. *Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978). Therefore, we conclude that the district court did not err in denying this claim.

14   Exh. 68 at 2-3.

15   The trial testimony reflects the following. A LVMPD officer testified that he received a dispatch

16   call: "The call came out as a person with a gun. The detail stated that there was a traffic altercation in

17   which the occupants of the maroon or red Cadillac had flashed a gun at the other person." Exh. 18 at

18   76.[2] The officer saw a vehicle that matched the description and, due to the report that occupants had

19   a gun, followed it until an additional police unit arrived. *Id*. at 77. The officer and a detective

20   conducted a vehicle stop at gunpoint and directed each occupant to exit the vehicle. *Id*. at 78. Petitioner

21   was driving, his cousin (and co-defendant) was in the passenger seat, with a third person in the back

22   seat. *Id*. at 79-80. A detective then approached the car and looked inside to verify all passengers had

23   exited. *Id*. at 92. At that time he saw a plastic bag of marijuana in the cup holder in the front middle

24   console as well as bags of what looked like methamphetamine. *Id*. at 92-93. Officers arrested the three

25   individuals and conducted an inventory search of the car as it was to be impounded. *Id*. at 95-96. The

26   _____

27   [2] Petitioner's co-defendant, who testified in exchange for the State not opposing probation, also testified that they were pulled over after they "got into a verbal confrontation with another

28   driver." Exh. 19 at 36.

1  detective found a 9mm semi-automatic handgun under the driver's seat, as well as methamphetamine

2  and ecstacy pills.  *Id.*

3      Respondents are correct that petitioner offers no facts whatsoever to support his claim that no

4  probable cause supported the traffic stop (ECF #27, p. 10).  Moreover, the record reflects that the

5  Nevada Supreme Court's decision on this claim was not contrary to or an unreasonable application of

6  clearly established federal law, as determined by the U.S. Supreme Court.  28 U.S.C. § 2254(d).

7      **Ground 1(B)**

8      Petitioner claims that counsel was ineffective for failing to file a motion to suppress evidence

9  from the search of the East Agate residence because it was not his residence (ECF #15, pp. 13-14).

10     Cellphones that were recovered from the car contained photos of weapons that led police to

11  obtain a search warrant for 43 East Agate, #201, Las Vegas. Exh. 19 at 147-148.  Petitioner argues that

12  the search warrant did not name a person, and the condominium was leased to a Desiree Edwards,

13  "neither a  friend or relative of" petitioner (ECF #15, p. 13).  He contends that he had a reasonable

14  expectation of privacy in any items at that location.  *Id.*

15     The Nevada Supreme Court affirmed the denial of this claim, stating:

16     [Petitioner] claimed that his trial counsel was ineffective for failing to
       suppress the evidence from the search of the East Agate residence because this was not
17     his residence. [Petitioner] claimed that the warrant was defective because it did not
       name the person who lived in the residence.  [Petitioner] claimed that he was not a
18     friend or relation of the person who lived at the East Agate residence. [Petitioner]
       acknowledged that he had no standing, but nevertheless, maintained that he had a
19     reasonable expectation of privacy in items at that residence.

20
       [Petitioner] failed to demonstrate that his trial counsel's performance was deficient or
21     that he was prejudiced.  Assuming [petitioner's] assertions distancing himself from the
       East Agate residence were true, [petitioner] would have no standing to challenge the
22     search of a residence in which he did not have a protected privacy interest.  *Rakas v.
       Illinois*, 439 U.S. 128, 130-31 n.1 (1978) ("The proponent of a motion to suppress had
23     the burden of establishing that his own Fourth Amendment rights were violated by the
       challenged search."); Katz v. United States, 389 U.S. 347, 352 (1967) (recognizing that
24     the Fourth Amendment requires an inquiry into whether the person claiming protection
       was entitled to assume privacy at the place under the circumstances concerned); *see also
25     State v. Taylor*, 114 Nev. 1071, 1077, 968 P.2d 315, 320 (1998) (recognizing that one
       must have an objective and subjective expectation of privacy in the place to be
26     searched). [Petitioner] would not have a reasonable expectation of privacy in an
       acquaintance's residence.   At trial, the testimony and evidence established that
27     [petitioner] resided at the East Agate address.  The warrant was not defective for failing
       to name a person as the place is described. NRS 179.045. The transcript of the probable
28     cause conversation for the telephonic warrant provided probable cause to search the East

-8-

Agate residence. *Keesee v. State*, 110 Nev. 997, 1002, 879 P.2d 63, 66 (1994) (recognizing that probable cause "requires that law enforcement officials have trustworthy facts and circumstances which would cause a person of reasonable caution to believe that it is more likely than not that the specific items to be searched for are: seizable and will be found in the place to be searched"). Therefore, we conclude that the district court did not err in denying this claim.

Exh. 68, pgs. 3-5.

The record reflects that petitioner gave officers permission to look at his cell phone. Exh. 19 at 147. Officers testified that the phone contained photos of guns and contained a video clip of petitioner firing a gun. *Id.* at 147-148. Officers obtained a search warrant for a residence at 43 East Agate, #201, Las Vegas, which was the address on the parking tags of the car's rearview mirror. *Id.* at 150.

First, the Nevada Supreme Court reasonably applied *Rakas* in pointing out that assuming petitioner's claim that he never lived at the residence is true, he lacked standing to challenge the search. 439 U.S. at 130-31 n.1. Moreover, petitioner's cousin and former co-defendant (who entered into a guilty plea agreement) and the owner of the condo both testified that petitioner lived there. Exh. 19 at 32-33, 91-92, 124-126; Exh. 20 at 92, 98-99. The State also presented evidence that the same plastic baggies with blue devil faces used to package methamphetamine were found at the residence and in the vehicle when petitioner was stopped and that paperwork that listed petitioner's address as 43 East Agate, #201 was also found at the residence. Exh. 19 at 75-76; Exh. 20 at 4-5, 16.

The record reflects that the Nevada Supreme Court's decision on this claim was not contrary to or an unreasonable application of *Strickland* or other federal law.

**Ground 1(C)**

Petitioner claims that counsel was ineffective for failing to challenge an insufficient indictment (ECF #15, pp. 14-15). He argues that the indictment was "fraudulently issued in violation of the Nevada Revised Statutes." *Id.* at 15. He claims a criminal complaint was pending at the time of the indictment. *Id.* at 14-15.

The Nevada Supreme Court affirmed the denial of petitioner's claim, explaining that the record provided no support for his claim that a criminal complaint had been filed first and pointing out that, notably, petitioner failed to provide a citation to the justice court case number. Exh. 68 at 5. The state

-9-

1   supreme court further concluded that to the extent that petitioner alleged trial counsel was deficient

2   relating to the issuance of a superseding indictment, he made only a bare allegation not supported by

3   the record on appeal. *Id*. at n.1.

4       Here, petitioner provides no support whatsoever–nor does the record provide any such

5   support–for his bare allegations that counsel was ineffective for failing to challenge an insufficient

6   indictment.  The Nevada Supreme Court's decision cannot be said to be contrary to or an unreasonable

7   application of *Strickland* or other federal law.

8       **Ground 1(D)**

9       Petitioner claims, without elaboration, that counsel was ineffective for failing to object to the

10  violation of petitioner's right to a speedy trial and that such error prejudiced the defense (ECF #15, p.

11  16).

12      The Nevada Supreme Court affirmed the denial of this claim, concluding that the documents

13  in the record appear to indicate that the parties agreed to the continuances that the court granted.  Exh.

14  68 at 5-6.  The Nevada Supreme Court noted that newly-appointed counsel's request for a continuance

15  was not deficient and held: "Even assuming that the decision to seek a continuance was without

16  [petitioner's] consent, [petitioner] failed to demonstrate that he was prejudiced.  [Petitioner] failed to

17  demonstrate that there was a reasonable probability of a different outcome had trial counsel not sought

18  any continuances." *Id*. at 6.

19      The state district court minutes reflect that on January 3, 2007, petitioner invoked his right to

20  a speedy trial, with two weeks waived.  Exh. 2 at 2.  On March 21, 2007, the court vacated and reset

21  the trial date, at the request of the defense. *Id*. at 5.  On April 16, 2007, petitioner's counsel's motion

22  to withdraw was granted, and he was appointed new counsel. *Id*.  Petitioner's new counsel requested

23  a continuance on May 9, 2007 because he had not yet received the entire file from prior counsel or the

24  discovery. *Id*. at 6.  Trial commenced on May 21, 2007. *Id*. at 7.

25      Petitioner provides no facts or arguments to support his claim that counsel was deficient in

26  securing continuances or that he suffered prejudice.  The Nevada Supreme Court's decision was not

27  contrary to or an unreasonable application of *Strickland* or other federal law.

28  ///

**Ground 1(E)**

Petitioner claims that counsel was ineffective for coercing petitioner to take the stand and testify (ECF #15, p. 17). Petitioner asserts that he strongly objected and protested, but that counsel told him he would be convicted unless he testified. *Id*.

The Nevada Supreme Court rejected this claim and pointed out that the state district court canvassed petitioner about the right to testify, including that he could not be compelled to testify. Exh. 68 at 6. The Nevada Supreme Court concluded that petitioner failed to demonstrate that his counsel's performance was deficient or that a reasonable probability of a different result existed if petitioner had not testified. *Id*.

The record reflects that the state district court specifically advised petitioner of his constitutional rights in relation to testifying. Exh. 19 at 116-118. The court explained to petitioner that he has the right to testify, that he may not be compelled to testify, and that no inference may be drawn from his failure to testify. *Id*. at 117. At the request of the petitioner, the court reviewed a second time the fact that, if he chose not to testify, the court would instruct the jury that they may draw no presumptions or inferences from that fact (if counsel requests such instruction). *Id*. Petitioner informed the court that he understood, and his counsel represented to the court the he and petitioner had discussed these rights "on a number of occasions." *Id*. at 118.

Petitioner provides no support whatsoever for his contention that counsel coerced him into testifying, and the record indicates that he was thoroughly canvassed. The Nevada Supreme Court's decision was not contrary to or an unreasonable application of *Strickland* or other federal law.

**Ground 1(F)**

Petitioner claims that counsel was ineffective for failing to negotiate a guilty plea, despite petitioner's requests (ECF #15, pp. 17-18).

The Nevada Supreme Court noted that, while petitioner may have wished to enter into a plea bargain, he was not entitled to one and that there was nothing in the record to indicate that the State was willing to offer any deal. Exh. 68 at 7. The Nevada Supreme Court held that petitioner failed to demonstrate the counsel's performance was deficient or that there was a reasonable probability of a

1  different outcome in the proceedings had trial counsel sought a plea bargain, and therefore, the state

2  district court did not err in denying the claim.  *Id*.

3      The record is devoid of any reference regarding whether petitioner discussed any wish to enter

4  into a guilty plea agreement with counsel or, more importantly, whether the State was willing to offer

5  any plea agreement.  In fact, this court finds no reference to any potential plea agreement whatsoever.

6  It cannot be said that the Nevada Supreme Court's decision on this claim was contrary to or an

7  unreasonable application of *Strickland* or other federal law.

8      **Ground 1(G)**

9      Petitioner claims that counsel was ineffective for failing to impeach the testimony of Stephanie

10  Ward, who owned the residence that was searched, when she changed her testimony when called as a

11  rebuttal witness (ECF #15, pp. 18-19).

12      The Nevada Supreme Court affirmed the denial of this claim, pointing out that Ward stated in

13  her rebuttal testimony that she had been vague or untruthful in her earlier trial testimony because she

14  wanted to protect petitioner.  Exh. 68 at 7.  The Nevada Supreme Court also stated that petitioner's

15  counsel questioned Ward about her memory, her new admission that she took drugs, and her motivation

16  for changing her story, and the state supreme court concluded that petitioner had failed to demonstrate

17  counsel's deficiency or a reasonable probability of a different outcome had counsel questioned Ward

18  further about her changed testimony.  *Id*.

19      The record indicates that Ward testified the second day of trial.  Exh. 19 at 120.  She testified

20  that she owned the condo located at 85 East Agate, Building 43, Unit 201and that she was leasing it to

21  petitioner's girlfriend, Desiree Edwards.  *Id*. at 121-122.  She testified that she was aware that petitioner

22  stayed at the condo but did not know whether he lived there.  *Id*. at 124.  She identified receipts that

23  were seized from the condo as receipts she wrote for petitioner when he paid the rent, pet deposit, and

24  gas bill for the condo.  *Id*. at 124-126.  Ward testified that when she entered the condo after the search

25  warrant was executed to clean it up, it contained both men's and women's clothing and toiletries.  *Id*.

26  at 134.

27      Petitioner's counsel elicited testimony from Ward that, as a real estate agent, she has seen other

28  instances where men pay the rent for their female friends.  *Id*. at 138.  He asked Ward if Edwards had

1   many boyfriends and Ward stated that she did not know.  *Id*.

2       When the State recalled Ward, she testified that she had lied earlier when she testified that she

3   did not use drugs.  Exh. 20 at 91.  She testified that petitioner had lived at the condo from when the

4   lease began in August 2006 and that she would get drugs from petitioner.  *Id*. at 92.  She also said that

5   she had spoken with petitioner on the phone many times since he was arrested, and that he told her he

6   would say his name was not on the lease, he did not live at the condo, and the drugs there did not belong

7   to him.  *Id*. at 93-95.  On re-direct, Ward testified that she was vague in her testimony the day before

8   because she did not want petitioner to go to jail "because of me and my testimony against him."  *Id*. at

9   102.

10      After Ward admitted that she had previously lied about not using drugs, petitioner's counsel

11  elicited testimony that she used methamphetamine about three times a week.  *Id*. at 100.  He questioned

12  her about whether her drug use affected her memory, which she denied.  *Id*.

13      Petitioner has failed to demonstrate that the Nevada Supreme Court's decision on this claim was

14  contrary to or an unreasonable application of *Strickland* or other federal law.

15      **Ground 1(H)**

16      Petitioner claims that counsel was ineffective for failing to impeach the testimony of co-

17  defendant Shane Young, who was offered probation in exchange for testifying to "unproven claims"

18  (ECF #15, pp. 19-20).

19      Affirming the denial of this claim, the Nevada Supreme Court noted that petitioner failed to

20  identify the nature of the unproven claims or what testimony was provided to support such claims.  Exh.

21  68 at 8.  The Nevada Supreme Court pointed out that the jury heard that the State had agreed to not

22  oppose probation in exchange for Young's testimony against petitioner and concluded that petitioner

23  failed to show his counsel was deficient or that there was a reasonable probability of a different outcome

24  if counsel had further questioned Young about his plea agreement.  *Id*.

25      Petitioner is correct that Young testified that petitioner lived with his girlfriend, Desiree

26  Edwards, at the condo in question, did not have legal immigration status, sold drugs, and had drugs and

27  guns in the condo.  Exh. 19 at 32-42.  The State elicited testimony from Young that he made an

28  agreement with the State that the State would not oppose probation if Young testified and admitted the

-13-

1    guilty plea agreement into evidence.  Exh. 19 at 38.

2        The record also reflects that petitioner's counsel questioned Young regarding the fact that Young

3    testified on direct that the only drugs he was aware of in the car before they were arrested was the

4    marijuana, but that he had pled guilty to other drug charges as well.  *Id*. at 44.  Counsel asked Young

5    whether he lied on direct or when he pled guilty.  *Id*.  Young stated that despite the fact that he was

6    under oath he lied when he pled guilty.  *Id*. at 44-45.

7        Petitioner presents no facts regarding to what unproven claims he refers.  Moreover, Young's

8    plea deal was presented to the jury.  Petitioner has failed to demonstrate that the Nevada Supreme

9    Court's decision on this claim was contrary to or an unreasonable application of *Strickland* or other

10   federal law.

11       Grounds 1(A) through 1(H) are, therefore, denied.

12       **Ground 1(I)**

13       Petitioner claims that counsel was ineffective because he failed to file any motions prior to or

14   during trial (ECF #15, pp. 20-21).  As respondents point out, in petitioner's original federal petition,

15   he asserts that trial counsel should have raised many of the issues in a pretrial habeas petition (ECF #4,

16   p. 6).  In his amended petition, filed through counsel, petitioner claims that trial counsel should have

17   moved to sever the unlawful possession of a firearm counts (ECF #15, p. 20).  Respondents thus

18   question whether petitioner exhausted the claim in state court.

19       Petitioner now claims that counsel should have moved to sever the three charges of unlawful

20   possession of a firearm pursuant to NRS 202.360(2)(b), which prohibits anyone unlawfully present in

21   the United States to own or possess a firearm (ECF #31, p. 3).  Petitioner relies on a Nevada Supreme

22   Court decision holding that, in a multi-count indictment, where some counts are for possession of a

23   firearm by an ex-felon pursuant to NRS 202.360, those counts must be severed because the risk of

24   unfair prejudice to the defendant is too great.  *Brown v. State*, 967 P.2d 1126, 1131 (Nev. 1998).

25   Petitioner argues that by extension of this logic, evidence that a defendant is illegally in the United

26   States creates the same danger of prejudice as evidence that the defendant is an ex-felon and

27   compromises the fairness of trial in the same way (ECF #31, p. 4).  Petitioner claims that at the very

28   least, his counsel should have stipulated to petitioner's immigration status.  In *Edwards v. State*, the

-14-

1   Nevada Supreme Court held that, in a prosecution for possession of a firearm by an ex-felon, if the

2   defendant offers to stipulate to his or her ex-felon status, admission of the prior convictions solely to

3   prove ex-felon status is unduly prejudicial.  132 P.3d 581, 582 (Nev. 2006).  Petitioner notes that in

4   denying his direct appeal, the Nevada Supreme Court held that the trial court committed no plain error

5   by admitting evidence that petitioner was in the United States unlawfully because the evidence was

6   relevant to establish an element of the three charges for unlawful possession of a firearm under NRS

7   202.360(b)(2) and petitioner did not offer to stipulate to his immigration status.  Exh. 55 at 3 (and at

8   n.3: "*Cf. Edwards v. State*, 132 P.3d 581, 582 (Nev. 2006)").

9        This court may dismiss a meritless claim that is unexhausted. 28 U.S.C. § 2254(b)(2).  It cannot

10  be said that when petitioner's counsel did not file a motion to sever the unlawful possession of a firearm

11  counts, that his action–or inaction–was so deficient that he could not be considered to be functioning

12  as counsel.  *Williams,* 529 U.S. at 390-91(citing *Strickland,* 466 U.S. at 687).  The state supreme court

13  decisions regarding ex-felon in possession charges were not squarely on point with petitioner's

14  situation–charges that he was unlawfully in possession of firearms due to his lack of legal immigration

15  status.  Petitioner's trial counsel could have moved to sever the charges or moved to stipulate to

16  petitioner's immigration status, arguing to the court that petitioner faced analogous undue prejudice as

17  in the *Brown* and *Edwards* cases.  Whether the motion would have been successful, however, is entirely

18  unclear.  This is precisely the distorting effects of hindsight that *Strickland* instructs should be avoided.

19  466 U.S. at 689.  "The likelihood of a different result must be substantial, not just conceivable."

20  *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).  The court concludes that petitioner

21  cannot show a reasonable probability–that is–a "probability sufficient to undermine confidence in the

22  outcome"–that such a motion–a motion that did not urge the court to apply a state supreme court

23  decision but urged it to extend a state supreme court decision to new circumstances–would have been

24  successful.  The fact that trial counsel did not file a motion to sever was not outside the wide range of

25  reasonable professional assistance required by *Strickland*.  Petitioner has not demonstrated that

26  counsel's actions were unreasonably deficient and that such deficient performance prejudiced him.

27  Accordingly, ground 1(I) is denied.

28  ///

-15-

**Ground 1(J)**

Petitioner claims that the cumulative effect of counsel's errors set forth in ground 1 severely prejudiced him and deprived him of due process and a fair trial (ECF #15, p. 21).  Respondents are correct that in his original federal habeas petition, petitioner claimed trial counsel was ineffective for insisting on going to trial despite the fact the case was unwinnable (ECF #4, p. 6).

The Nevada Supreme Court rejected the claim that counsel was ineffective for insisting on going to trial, holding: "Appellant failed to demonstrate that he was prejudiced.  Absent the State offering a plea bargain, any guilty plea would have involved a guilty plea to all of the charges." Exh. 68 at 8.

In his counseled amended petition, petitioner instead set forth a claim of cumulative error by trial counsel (ECF #15, p. 21).  Respondents again question whether petitioner exhausted this claim in state court.

Here, This court has concluded that the Nevada Supreme Court, in affirming the denial of the ineffective assistance of counsel claims in federal ground 1, did not render decisions contrary to or that were unreasonable applications of clearly established federal law.  Thus, petitioner's claim of the cumulative error of his claims set forth as grounds 1(A) - 1(I) necessarily fails. Ground 1(J) lacks merit and is denied.  28 U.S.C. § 2254(b)(2).

**Ground 2**

Petitioner argues that his appellate counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights (ECF #15, pp. 22-24).  He claims that appellate counsel failed to raise several meritorious issues on appeal, namely:  (1) that no probable cause existed to stop the vehicle; (2) that the condo search warrant was defective and thus the items there illegally seized;  (3) insufficiency of grand jury indictment;  (4) violation of petitioner's speedy trial rights;  (5) that petitioner was coerced into testifying at trial; (6) that the State suborned perjury by allowing Stephanie Ward to change her testimony;  and (7) that co-defendant Young's testimony was tainted by the State's agreement not to oppose probation.  *Id*. at 22.

To state a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that counsel unreasonably failed to present nonfrivolous issues, resulting in prejudice–that is, that the omitted issues would have had a reasonable probability of success on appeal.  *Smith v. Robbins*, 528

1    U.S. 259, 285-286 (2000).  Appellate counsel is not required to raise every nonfrivolous issue on appeal,

2    but may be selective in order to maximize the likelihood of success on appeal.  *Jones v. Barnes*, 463

3    U.S. 745, 751 (1983).

4         In affirming the denial of these claims, the Nevada Supreme Court first considered all of federal

5    ground 2, with the exception of ground 2(4), the speedy trial claim.  Exh. 68 at 9.  The Nevada Supreme

6    Court concluded that, for the same reasons that it had determined that trial counsel was not ineffective

7    for failing to raise these claims, petitioner similarly failed to demonstrate a reasonable probability of

8    a different outcome had appellate counsel raised any of these issues on direct appeal.  *Id*.

9         The Nevada Supreme Court next considered federal ground 2(4), whether appellate counsel was

10   ineffective for failing to argue that petitioner's right to a speedy trial was violated.  *Id*.  The Nevada

11   Supreme Court noted again that "[t]he continuances were pursuant to the actions of the defense" and

12   held that petitioner failed to demonstrate that he was prejudiced by any of the delays.  *Id*.

13        The Nevada Supreme Court reasonably applied federal law regarding ineffective assistance of

14   appellate counsel, and therefore, its denial of these claims was not contrary to or an unreasonable

15   application of federal law.  Ground 2 is denied.

16        Accordingly, petitioner has failed to demonstrate that the Nevada Supreme Court's decision is

17   contrary to, or involves an unreasonable application of, clearly established federal law, as determined

18   by the U.S. Supreme Court.  28 U.S.C. § 2254(d).  The court determines that ground 2 is meritless and

19   is denied.

20        The petition is thus denied in its entirety.

21   **IV.  Certificate of Appealability**

22        In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28

23   U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th

24   Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

25   petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

26   certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

27   (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's

28   assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In

-17-

order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*  This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The court will therefore deny petitioner a certificate of appealability.

**V. Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus (ECF #15) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and close this case.

DATED this 22nd day of March, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

-18-